UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re:

    Encore Property Management of　　　　Bankruptcy Case No. 18-20014-PRW
    Western New York, LLC,　　　　　　　　Chapter 11

              Debtor.

**DECISION AND ORDER
DISMISSING CHAPTER 11 PETITION
FOR CAUSE, AS FILED IN BAD FAITH,
UNDER 11 U.S.C. § 1112(b)**

PAUL R. WARREN, U.S.B.J.

    In 2009, Barack Obama was sworn in as the forty-fourth President of the United States. In 2009, Mine That Bird won the Kentucky Derby—coming from last place to pull off a monumental upset by beating 50-to-1 odds. And, in 2009, Wells Fargo started an action against Encore Property Management of Western New York, LLC in state court, to foreclose its mortgage on the Imperial Manor Apartments in Greece, New York—along with a handful of other commercial properties. Nine years later, President Obama and Mine That Bird are both enjoying retirement. But, despite being granted a judgment of foreclosure by the state court in 2010, Wells Fargo has been unable to retire from the field in its litigation battle against Encore Western.

    This Chapter 11 case is the latest move pulled by Encore Western to prevent Wells Fargo from executing on its judgment of foreclosure. While it quarrels with the appraised value of $24,870,000 suggested by Wells Fargo, Encore Western admits that the fair market value of its portfolio of properties is around $40,000,000. That difference would be a big deal, but for the fact that the amount due Wells Fargo is over $117,000,000. There are virtually no unsecured creditors

in this case. This is a two-party dispute between the secured creditor and its mortgagor—a dispute that will soon celebrate its 10th birthday.

Wells Fargo has moved to dismiss this Chapter 11 case as a bad faith filing, under 11 U.S.C. § 1112(b). For the reasons that follow, the Court finds that Encore Western filed this Chapter 11 case in bad faith. Under 11 U.S.C. § 1112(b), the motion of Wells Fargo is **GRANTED**. The Chapter 11 petition is **DISMISSED**. Wells Fargo's request for alternative relief, in the form of relief from the automatic stay, under 11 U.S.C. § 362(d)(1) and (2), is **DENIED, AS MOOT**. And its request for *in rem* relief from the automatic stay, under 11 U.S.C. § 362(d)(4)(B), is also **DENIED, AS MOOT**.

## I.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1), and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 FRBP.

## II.

## BACKGROUND

A. <u>**The Wells Fargo Motion**</u>

The mountain of exhibits attached to Wells Fargo's motion to dismiss—tracing the glacial progress of the state court litigation—must have required the assistance of several Sherpas to lug to the courthouse. The nine-year history of the litigation between the parties in the state courts is dizzying. The Court will just mention those facts necessary to decide the motion to dismiss—wandering into the forest with the litigants seems ill-advised.

In 2004, Encore Properties of Rochester, New York, LLC purchased the Imperial Manor Apartments with two loans from Intervest National Bank. (ECF No. 9 ¶ 9). The loans were secured by mortgages on the property. (*Id.*). In August 2007, Encore Rochester transferred the property to Encore Western by a deed. (*Id.* ¶ 10 & Ex. B). In connection with the transfer, Encore Western also obtained a $49 million commercial loan from Column Financial, Inc., collateralized by a mortgage on the Imperial Manor Apartments and other commercial properties. (*Id.* ¶ 10). That loan also consolidated the Intervest notes and mortgages, as the Intervest interests had been assigned to Column. (*Id.*). Column then assigned the consolidated note and mortgage to Wells Fargo. (*Id.*). And, in 2009, Encore Western defaulted. (*Id.* ¶ 11).

Wells Fargo commenced an action in the state court to foreclose its commercial mortgage on Encore Western's properties. That was June 16, 2009. (ECF No. 23 ¶ 3). Since 2009, a state court appointed receiver has managed the Encore Western properties, collected rent and profits, and made necessary repairs and expenditures. (ECF No. 9 ¶¶ 12-18). In January 2010, the state court granted a judgment of foreclosure and sale, in the amount of $68,801,098.26, in favor of Wells Fargo. (ECF No. 23, Ex. C). The judgment accrues interest at a rate of approximately $17,000 each day. (*Id.*, Ex. D). With interest, the judgment of foreclosure now stands at over $117,000,000. (*Id.* ¶ 7 & Ex. D). That judgment was never appealed. (*Id.*).

Amazingly, for almost nine years, Encore Western and Encore Rochester have staved off the foreclosure sale by starting a series of lawsuits in state court. In one action, Encore Rochester asserted that two of its four members did not consent to Encore Rochester's 2007 transfer of the properties to Encore Western, claiming that, as a result, Wells Fargo did not have a valid mortgage on the properties. (ECF No. 9 ¶ 21). But the state court granted partial summary judgment in favor of Wells Fargo—holding that the mortgage liens were valid—and ordered the foreclosure sale to proceed. (*Id.* ¶¶ 22-23). Undaunted, Encore Rochester brought a second action, seeking to

3

Case 2-18-20014-PRW    Doc 52    Filed 02/16/18    Entered 02/16/18 14:45:21    Desc Main
Document      Page 3 of 13

cancel and discharge Wells Fargo's mortgage liens on the Imperial Manor Apartments property. (ECF No. 23 ¶ 45). The state court rendered a decision and entered an order granting Wells Fargo's motion to dismiss the complaint, which Encore Rochester appealed to the Appellate Division Fourth Department. (*Id.* ¶ 48). Encore Rochester lost that appeal. (*Id.*). The foreclosure sale was ordered to proceed.

So, the Encore entities next resorted to bankruptcy to stop the foreclosure. In April 2016, Encore Rochester—represented by David Stern, Esq.—filed a Chapter 11 petition in the Northern District of New York. (Case No. 16-60524-6-dd (Bankr. N.D.N.Y. 2016) (Davis, J.)). In August 2016, Judge Davis granted Wells Fargo's motion to dismiss the petition, under 11 U.S.C. § 1112(b), finding that the Chapter 11 case was filed in bad faith. (*Id.*, ECF No. 39). In a bench decision, Judge Davis found that cause existed to dismiss the Chapter 11 case as a bad faith filing, based on several factors—including the fact that Encore Rochester had only one asset, Encore Rochester had few unsecured creditors whose claims were small in comparison to the claims of secured creditors, the timing of the filing evidenced an effort to gain an advantage in state court litigation, and the bankruptcy case was essentially just a two-party dispute between the debtor and its secured creditor. (*Id.* at 14-15).

On December 15, 2017—the morning of Wells Fargo's scheduled foreclosure sale of the properties—Encore Western filed a Chapter 11 petition before this Court. (Case No. 17-21325-PRW (Bankr. W.D.N.Y. 2017) (Warren, J.)). Perhaps doing a bit of forum shopping? The petition was filed *pro se* by Jason Palmer, as trustee for the Palmer Family Trust. (*Id.*, ECF No. 1). The Court dismissed the petition *sua sponte* that same day, because a corporation cannot appear in a proceeding *pro se*. (*Id.*, ECF No. 2 (citing *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir. 1983))). Wells Fargo canceled the foreclosure sale, instead of seeking guidance from the Court.

4

Encore Western filed another Chapter 11 petition on January 8, 2018—this time represented by Mr. Stern[1]—this most recent filing coming one day before Wells Fargo's most recent scheduled foreclosure sale of the properties. (ECF No. 1; *see* ECF No. 23 ¶ 10). The petition lists over $81 million in assets and $0 in liabilities—a perplexing assertion given that Encore Western seeks bankruptcy relief. (ECF No. 28). According to Encore Western, its assets include thirteen commercial properties with a total value of $40 million. (ECF No. 20 ¶ 8). Encore Western intends to propose a Chapter 11 sale plan to a buyer, who has suggested an interest in paying $42 million to purchase the properties. (*Id.* ¶¶ 9-10 & Ex. A). The letter of intent has not been accepted by Encore Western—by its terms, it may have expired already. (*See id.*). The amount owed Wells Fargo on its judgment of foreclosure exceeds $117 million, so how a sale could happen without the consent of Wells Fargo is a mystery. And, Wells Fargo maintains that it will object to any plan proposed and to any attempt to sell the property free and clear of liens under 11 U.S.C. § 363(f). (ECF No. 25 at 11). The sale plan described by Encore Western is a pipe dream, probably mentioned as a stall tactic.[2] By Order of the Court—and with the consent of Encore Western—the state court appointed receiver has continued to manage and operate the properties during the case. (*See* ECF No. 43).

---

[1] The Court wonders how Mr. Stern can represent Encore Western, after having served as the attorney for Encore Rochester in the Northern District bankruptcy case. Given the state court action in which Encore Rochester attacked (as fraudulent) the validity of the transfer of the properties to Encore Western, it appears that Mr. Stern may have a conflict of interest. The Court has not yet approved Mr. Stern's retention. This decision will render the retention application moot.

[2] "Dreams are the bright creatures of poem and legend, who sport on earth in the night season, and melt away with the first beam of the sun, which lights grim care and stern reality on their daily pilgrimage through the world." Charles Dickens, *Life and Adventures of Nicholas Nickleby* 138 (Macmillan and Co. ed. 1907) (first published as Chapter 13, June 1838).

Boiled down to its bones, Wells Fargo has moved to dismiss the case, arguing that the petition was not properly authorized by all of the members of Encore Western and that the petition was filed in bad faith, under 11 U.S.C. § 1112(b). (ECF No. 23). Alternatively, Wells Fargo seeks relief from the automatic stay, under 11 U.S.C. § 362(d)(1) and (2), and also requests an Order granting *in rem* relief for 2 years under § 362(d)(4).

**B.** **The Encore Western Response**

First, a word about Mr. Stern's unacceptably cavalier approach to the Court. Twenty-three days after Wells Fargo served and filed its motion, and fourteen hours before the hearing on that motion, Mr. Stern filed a response in opposition to the motion. (ECF No. 48). The response consisted of an eleven-page unsworn manifesto by Mr. Stern, attached to which are 126 pages of "exhibits." The response was not accompanied by a memorandum of law. Instead, Mr. Stern instructs the Court to "see research on conflicts of interests endemic in Pooling and Service Agreements with Special Servicers in Collateralized Mortgage Backed Securities markets contained under Exhibit 'A.'" (*Id.* ¶ 7). Exhibit A consists of 57 pages of what appear to be newspaper articles, internet newsletters, and a white paper from an unknown source—complete with an illegible flow chart, looking very much like a page from a football playbook diagraming a fake punt-triple reverse. (*See id.*, Ex. A, unnumbered page 57).[3]

Wells Fargo invited the Court to treat its motion as unopposed because Mr. Stern's response was late filed. By standing order, written responses to motions heard in the Rochester

---

[3] A young attorney, looking for pointers on litigation best practices, would do well to study the "Response" filed in this case. (*See* ECF No. 48). A finer example of what not to do as a litigator would be hard to find. This seems like a good opportunity for the Court to clarify its expectations of counsel appearing in the Rochester Division: (1) motions or responses made by letter submissions are unacceptable; (2) written responses to motions are required to be submitted, by parties represented by counsel, 3 days before a hearing—the Court long ago "ordered otherwise" for purposes of Rule 9014(a) FRBP; and (3) a memorandum of law is to be submitted to support legal arguments where necessary—putting scraps of paper, bits of string, a lucky bottle cap, and an old red yo-yo in a cigar box doesn't cut it.

6

Division are required to be filed not less than 3 days before the scheduled hearing date. (*See* Standing Order of December 2009, http://www.nywb.uscourts.gov/general-and-standingorders; *see also* Judge Warren "Motion Practice," http://www.nywb.uscourts.gov/content/judge-warren). For purposes of ensuring a complete record and explanation of the Court's disposition of the arguments advanced by counsel in the response, the Court will address the response.

In a nutshell, Encore Western argues that its aim in this Chapter 11 is not obstructionist; its professed goal is to protect the investors holding bonds whose interests are represented by Wells Fargo, as trustee. (*See* ECF No. 48 ¶¶ 1-19). Encore Western claims that Wells Fargo and Key Bank, the Master Servicing Agent under a "Pooling and Servicing Agreement" dated November 1, 2007, are acting in concert to undervalue Encore Western's real estate portfolio, in order to buy that real estate at foreclosure for the benefit of Wells Fargo and Key Bank, to the detriment of investors. (*Id.*). It should be noted that Wells Fargo is a creditor of the Chapter 11 debtor. The bondholders are investors in a creditor of Encore Western.

### III.

### DISCUSSION

Wells Fargo has moved for dismissal of this Chapter 11 case for cause, arguing that the petition was filed in bad faith. Wells Fargo also requests relief from the automatic stay, coupled with *in rem* relief that would prevent the automatic stay from applying to any of Encore Western's real estate holdings for 2 years. While the motion seems to request relief in the conjunctive, the Court will treat the motion as requesting relief in the alternative. And the Court will address the issues in the same order as in the motion—first, is dismissal of the Chapter 11 case for cause warranted? Second, if dismissal is not warranted, is stay relief with *in rem* reach appropriate? Because the answer to the first question is yes, the Court need not answer the second.

7

Case 2-18-20014-PRW    Doc 52    Filed 02/16/18    Entered 02/16/18 14:45:21    Desc Main
Document      Page 7 of 13

A.  **Encore Western Does Not Have Standing to Police the Pooling and Servicing Agreement.**

As Encore Western imagines things, it has a contractual obligation (and right) to protect the bondholder-investors from economic harm at the hands of the Trustee, Wells Fargo, and the Master Servicing Agent, Key Bank. (*See* ECF No. 48 ¶¶ 17-18). Encore Western argues that if the foreclosure sale ever happens (a future event), Key Bank and Wells Fargo will scoop up the real estate based on low-ball appraisals. How that would happen in a public auction sale of the property under New York Law was not explained by Mr. Stern, despite some not-so-gentle prodding by the Court at oral argument. And without a single citation of authority, counsel insisted that the Wells Fargo bondholder-investors were "creditors" of Encore Western, with the right to vote on a plan. Counsel offered nothing in support of this position, other than righteous indignation.

In order to appear and be heard in a Chapter 11 case, one must be a party in interest. *See* 11 U.S.C. § 1109(b). The Second Circuit "has held that the investors, as investors in a creditor of the debtor, were not a 'party in interest' within the meaning of section 1109(b)." *In re Innkeepers USA Trust*, 448 B.R. 131, 143 (Bankr. S.D.N.Y. 2011) (citing *In re Refco, Inc.*, 505 F.3d 109, 118-19 (2d Cir. 2007)). Here, the "party in interest in the bankruptcy sense" is Wells Fargo, representing its investors' financial interest under the Pooling Agreement. *See In re Innkeepers*, 448 B.R. at 142. Only Wells Fargo, not the bondholder-investors, could assert a claim against the Encore Western estate. *See id.*

Encore Western also failed to establish either constitutional standing or prudential standing to assert claims or interests on behalf of the bondholder-investors of Wells Fargo, as Trustee. Here, Encore Western asserts that Key Bank or Wells Fargo might try to buy the mortgage properties below market prices, injuring the bondholders by their self-dealing. But, that has not actually happened. It is a hypothetical event that Encore Western imagines might injure the bondholders

8

at a foreclosure sale some time in the future. There is no evidence in the record to demonstrate an actual injury or imminent harm to Encore Western occasioned by the imagined and hypothetical misdeeds of Wells Fargo and Key Bank. After all, Encore Western candidly admits that it has absolutely no equity in its real properties—they are underwater by at least $75 million (using Encore Western's absolute "best case" value of $42 million for those properties). On the record before the Court, Encore Western has failed to demonstrate constitutional standing to raise issues on behalf of bondholder-investors of the Wells Fargo trust agreement. *See Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 85 (2d Cir. 2014).

Even if constitutional standing might be found, Encore Western lacks prudential standing. "The prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves. The plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* at 86 (internal quotations omitted) (citing *Warth v. Seldin*, 422 U.S. 490, 499, 509 (1975)). Encore Western's self-proclaimed reason for filing its Chapter 11 petition is best described by Mr. Stern: "the filing involves salvaging the fair value of 5 multi-million-dollar properties *for the benefit of protecting the interests of numerous [bondholders under the Pooling and Servicing Agreement]*." (ECF No. 48 ¶ 32 (emphasis added); *see also* ¶¶ 1, 3, 6, 7, 9, 15, 17, 18, 19, 37).

The bondholder-investors under the Pooling and Servicing Agreement are not parties in interest under 11 U.S.C. § 1109(b). They hold no claims that can be asserted against the Chapter 11 estate. Encore Western does not have standing to assert obligations or rights on behalf of the bondholder-investors under separate agreements to which Encore Western is not a party. There is no bankruptcy purpose or interest to be addressed in this Chapter 11 case. The Robin Hood-like rationale on which Encore Western's Chapter 11 filing is premised is as mythical as the legend

9

itself. If there is a story to be told by the bondholder-investors, it isn't Encore Western's story to tell—and it is not an issue for the bankruptcy court to hear. *See In re Innkeepers*, 448 B.R. at 142.

**B.      The Petition Was Filed in Bad Faith; Dismissal for Cause Is Appropriate Under 11 U.S.C. § 1112(b).**

It is well established that a debtor's lack of good faith in filing a petition may constitute sufficient cause to dismiss a Chapter 11 case. 11 U.S.C. § 1112(b); *In re CTC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997); *In re Valid Value Props., LLC*, No. 16-13299, 2017 Bankr. LEXIS 27, at *14 (Bankr. S.D.N.Y. Jan. 5, 2017). "When it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the Chapter 11 petition may be frivolous." *In re CTC*, 113 F.3d at 1310. As recognized by the Second Circuit, "the purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." *Id.* Protection under Chapter 11 is not warranted where there is no viable business to rehabilitate. *Id.* (citing *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985)). The Second Circuit has further warned that Chapter 11 should not be used to "attack a judgment collaterally." *Id.*; *see In re GEL, LLC*, 495 B.R. 240, 246 (Bankr. E.D.N.Y. 2012). Chapter 11 should be used to reorganize rather than to relitigate. *See In re First Conn. Consulting Grp., Inc.*, 254 F. App'x 64, 68 (2d Cir. 2007); *In re CTC,* 113 F.3d at 1310; *In re GEL, LLC*, 495 B.R. at 246.

In determining whether good faith is absent (and bad faith is present), the court must consider the totality of the circumstances—not one single factor. *See Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC*, 476 B.R. 60, 68-69 (E.D.N.Y. 2012); *In re Valid Value Props.*, 2017 Bankr. LEXIS 27, at *15. "[I]t is a highly factual determination but also one that may sweep broadly." *In re CTC,* 113 F.3d at 1312. The Second Circuit has identified eight factors as adequate evidence of a bad faith filing:

10

(1) the debtor has only one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

*Id.* at 1311.

Here, nearly all of the *CTC* factors are present—and the presence of these factors is not disputed. First, Encore Western's only assets are the same portfolio of properties that are the subject of the $117 million judgment of foreclosure in favor of Wells Fargo. Next, the source of Encore Western's financial problems stems from a two-party dispute, in which Encore Western challenges the validity of Wells Fargo's mortgage on the properties—a challenge that has been repeatedly rejected by the state courts. The fact that Encore Rochester has its own disputes with Wells Fargo concerning the Imperial Manor Apartments does not negate this factor. The dispute is between Wells Fargo and Encore Western—and, by way of collateral state court litigation, Encore Rochester (a predecessor in interest to the real estate at issue). No innocent "third parties" to this Chapter 11 exist, in any meaningful sense. Next, the most recent Chapter 11 bankruptcy cases—filed in December 2017 and January 2018—were each filed literally on the eve of a scheduled foreclosure sale. And finally, the properties have been under the management and

control of the receiver for nearly 9 years—Encore Western, as a legal entity, has no cash flow and no employees. In sum, Encore Western has no viable business to rehabilitate. It seems that Encore Western's only "business" is to litigate with Wells Fargo, doubtlessly adding great expense to the bottom line but not generating even one dollar of income. "As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith." *In re HBA East, Inc.*, 87 B.R. 248, 259-60 (Bankr. E.D.N.Y. 1988).

Beyond the presence of all of the *CTC* factors, Encore Western's incipient sale plan appears to be a non-starter. The hinted-at sale of the properties for $42 million is an amount nearly three times less than the secured claim held by Wells Fargo for $117 million. Wells Fargo indicates it will object to a § 363 sale of the properties and it will object to any sale plan—extinguishing any possibility that a plan could ever be confirmed. Encore Western's suggestion that the Wells Fargo bondholder-investors will overwhelmingly support confirmation ignores 11 U.S.C. § 1109(b). (*See* ECF No. 48 ¶ 37). Wells Fargo controls the secured and unsecured classes in this case. The plan confidently described by Mr. Stern on behalf of Encore Western is patently unconfirmable. And, it certainly appears that Encore Western's case is an unabashed attempt to end-run the state court judgment of foreclosure and an attempt to relitigate legal issues that were decided by the state court years ago. (*See id.* ¶¶ 25, 27 (boldly announcing that Encore Western expects the bankruptcy court to resolve the claim and title disputes with Encore Rochester and Wells Fargo that have already been partially adjudicated by the state court, with remaining issues "trial ready since 2014")). The bankruptcy courts cannot be utilized to collaterally attack final judgments rendered by a state court. *In re CTC*, 113 F.3d at 1310.

The Court has considered whether conversion to Chapter 7 would be in the best interest of the creditors and the estate, as required by 11 U.S.C. § 1112(b). At oral argument, the UST

expressed strong opposition to conversion because there are virtually no unsecured creditors and no available assets to be liquidated for the benefit of unsecured creditors. Wells Fargo indicated that it would not consent to a carve-out. The best interest of creditors and the estate is served by dismissal.

The Court finds, based on the uncontroverted facts, that this Chapter 11 case was filed in bad faith. Wells Fargo's motion to dismiss for cause, under 11 U.S.C. § 1112(b), is **GRANTED**. The Court need not reach the issue of whether the petition was properly authorized. Wells Fargo's motion for relief from the automatic stay, under 11 U.S.C. § 362(d)(1) and (2), and request for *in rem* relief under 11 U.S.C. § 362(d)(4) are **DENIED, AS MOOT**.

## IV.

## CONCLUSION

Encore Western filed its Chapter 11 petition in bad faith. The motion of Wells Fargo to dismiss for cause is **GRANTED**, under 11 U.S.C. § 1112(b). The Chapter 11 petition is **DISMISSED**. The motion of Wells Fargo for relief from the automatic stay and for an order granting *in rem* relief against the properties is **DENIED, AS MOOT**. The Clerk of Court is directed to close this case immediately.

**IT IS SO ORDERED.**

DATED: February 16, 2018 _____/s/_____
    Rochester, New York     HON. PAUL R. WARREN
                                      United States Bankruptcy Judge